UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCOTT MACKLES, on behalf of himself and
all others similarly situated,

               Plaintiff,

      v.

BOAR'S HEAD PROVISIONS CO., INC.,

               Defendant.

Case No. 1:13-cv-04855(HB)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

THE COMPLAINT ......................................................................................................................4

ARGUMENT ...............................................................................................................................7

    I.     STANDARDS ON A MOTION TO DISMISS......................................................7

    II.    PLAINTIFF'S CLAIMS UNDER GBL §§ 349 and 350
        ARE NOT PREEMPTED ........................................................................................8

        A.    THERE IS NO BASIS TO PREEMPT PLAINTIFF'S CLAIM UNDER
             NY GBL § 350....................................................................................................8

        B.    GBL § 349, FMIA, AND PPIA IMPOSE CONCURRENT
             REQUIREMENTS .................................................................................................8

        C.    THE FOOD SAFETY AND INSPECTION SERVICE ("FSIS")
             PRE-APPROVALS DEFENDANT RELIES ON ARE INVALID.............9

             1.  Boar's Head failed to update the Lower Sodium Meats labels
                post-FSIS approval to prevent them from becoming inaccurate ...........9

             2.  The Lower Sodium Meats' labels fail to draw a valid comparison .....11

    III.   THE COMPLAINT STATES A CLAIM UNDER GBL §§ 349 AND 350..........12

    IV.   THE COMPLAINT STATES A CLAIM FOR BREACH OF
        EXPRESS WARRANTY ................................................................................13

CONCLUSION............................................................................................................15

i

TABLE OF AUTHORITIES

<u>Cases:</u>

*Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010)..................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir.2007)...........................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................7

*Cipollone v. Liggett Group*, 505 U.S. 504 (1992) ........................................................................14

*City of New York v. Smokes-Spirits.com*, 12 N.Y. 3d 616 (2009) ...................................................12

*DiBartolo v. Abbott Laboratories*, 914 F.Supp.2d 601 (S.D.N.Y. Dec. 21, 2012).........................14

*Jernow v. Wendy's Int'l.*, 2007 WL 4116241, (S.D.N.Y. Nov. 15, 2007) ......................................13

*Kuenzig v. Kraft Foods*, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011),
   aff'd 505 Fed.App'x 937 (11th Cir. Feb. 1, 2013).........................................................9, 10

*Lacourte v. JP Morgan*, 2013 WL 4830935 (S.D.N.Y. September 4, 2013) .................................12

*Meaunrit v. The Pinnacle Foods Group, LLC*, 2010 WL 1838715 (N.D.Cal. May 5, 2010)........10

*Schwartz v. HSBC Bank USA*, N.A., 2013 WL 5677059 (S.D.N.Y. Oct. 18, 2013) .......................8

*Stutman v. Chemical Bank*, 95 N.Y.2d 24 (2000).........................................................................12

*U.S. v. An Article of Food…Manischewitz…Diet Thins*, 377 F.Supp.746 (E.D.N.Y. 1974).........10

*U.S. v. Stanko*, 491 F.3d 408 (8th Cir. 2007)..................................................................................9

*Weiner v. Snapple Beverage Corp*, 2011 WL 196930 (S.D.N.Y Jan. 21, 2011)...........................14

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................10

<u>Statutes:</u>

21 U.S.C. § 451........................................................................................................................8

21 U.S.C. § 467e...................................................................................................................2, 8

21 U.S.C. §§ 451, et seq...........................................................................................................8

21 U.S.C. §§ 601, et seq.............................................................................................8

21 U.S.C. § 602...........................................................................................................8

21 U.S.C. § 678..................................................................................................2, 8, 9

NY GBL § 349................................................................................1, 2, 3, 4, 9, 12, 13

NY GBL § 350......................................................................................1, 2, 4, 8, 12, 13

Other Authorities:

9 C.F.R. § 317.313(j) .................................................................................................11

9 C.F.R. § 381.413(j) .................................................................................................11

9 C.F.R. § 381.413(j)(1)(ii)(b).....................................................................................11

9 C.F.R. § 317.313(j)(1)(ii)(b).....................................................................................11

Fed. R. Civ. Proc. 12(b)(6) ..........................................................................................1

Fed. R. Civ. Proc. 12(d) ...............................................................................................3

**PRELIMINARY STATEMENT**

Plaintiff Scott Mackles ("Plaintiff"), on behalf of himself and all others similarly situated, submits this memorandum of law in opposition to the motion (Dkt. No. 19) by defendant Boar's Head Provisions Company, Inc. ("Boar's Head" or "Defendant") to dismiss the Amended Complaint (Dkt. No. 18) ("Complaint" or "AC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and the grounds of federal preemption and failure to state a claim.

This is a class action on behalf of purchasers of Boar's Head:

a.   Golden Catering Style Oven Roasted Turkey Breast - 47% Lower Sodium;

b.   Our Premium 47% Lower Sodium Oven Roasted Turkey Breast-Skinless; and

c.   Branded Deluxe Ham 42% Lower Sodium. (collectively the "Lower Sodium Meats") (AC ¶1)

Plaintiff alleges that Boar's Head engaged in deceptive business practices by placing false and misleading labels on the Lower Sodium Meats and by making false and misleading claims concerning the Lower Sodium Meats in advertisements.  Boar's Head gave the impression that the Lower Sodium Meats were a healthier alternative to other Boar's Head turkey and ham products, when in fact the sodium content of both products were largely the same.  In much smaller typeface on its labels, Boar's Head stated that the Lower Sodium Meats were lower in sodium when compared, not to other Boar's Head products, but to other referenced USDA products.  However, as alleged in the Complaint, the referenced products do not exist in the USDA Database.  As such, the Complaint alleges that the claims made by Boar's Head are false and misleading. (AC ¶¶2-4)

Boar's Head's motion to dismiss should be denied.  Plaintiff's claims under New York General Business Law ("GBL") §§ 349 (deceptive acts and practices) and 350 (false advertising)

1

are not preempted by federal law.  Boar's Head does not even argue that Plaintiff's GBL § 350

claim is preempted, and, in all events, Boar's Head's preemption argument, which only concerns

labeling, is not applicable to a claim for false advertising.

Plaintiff's claim under GBL § 349 is not preempted. (AC ¶¶63-74) Congress enacted the

Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA") to

ensure proper labeling of meat and poultry products.  Both the PPIA and FMIA provide that

states may exercise "concurrent jurisdiction" with the USDA to prevent the distribution of

poultry and meat products that have false or misleading labeling.  *See* 21 U.S.C. §§ 467e & 678.

The Complaint invokes GBL § 349 to hold Boar's Head to the same standard as the PPIA and

FMIA. (AC ¶9)  Thus, as Plaintiff does not seek to hold Boar's Head to requirements beyond

those imposed by FMIA and PPIA, his claim is not preempted by federal law.

Boar's Head's main argument (Def. Br. at pp.10-17) is that its labels were approved by

the USDA and as a result the GBL § 349 claim is preempted.  Defendants are wrong because the

labels are no longer valid as the labels make a comparison with products that cannot be found in

the USDA data.  Boar's Head failed to update the labels – as it is required to do – to prevent

them from becoming inaccurate.  The relative claims on the Lower Sodium Meats labels fail to

draw valid comparisons because they referred consumers to specific products in the USDA

database that did not exist.  As such, Boar's Head's preemption argument fails.  As alleged in

the Complaint, Boar's Head asserted that the comparative product identified by Plaintiff in his

original complaint was not the proper USDA entry.  However, Boar's Head did not then, and has

not now in support of its motion to dismiss, identified the National Database designation number

("NDB") for the relevant product. (AC ¶¶3, 8, 31)

Boar's Head's second argument (Def. Br. at pp. 19-22) that Plaintiff fails to allege

cognizable injury to support claims for violations of the GBL also is without merit.  Boar's Head

ignores that Plaintiff has alleged that he was a "health-conscious" consumer in the market for

low sodium cold cuts. (AC ¶¶5 & 18)Without the deceptive representations in Boar's Head's

advertisements and labels concerning the sodium content of the Lower Sodium Meats, the

Complaint alleges Plaintiff and other class members would have purchased a cheaper alternative.

Plaintiff has alleged injury sufficient to state a claim under GBL. (AC ¶¶5, 15, 18, 43, 54, 69)

The Complaint states a claim for breach of warranty.  The Complaint alleges that Boar's

Head made an express warranty that its Lower Sodium Meats contained a specified percentage

less sodium than either valid USDA data or its own regular products.  Plaintiff relied on that

warranty to his detriment. (AC ¶¶15, 76)  This clearly states a claim for breach of express

warranty under New York law.  Moreover, Boar's Head's argument (Def. Br. at pp. 23-25) that

this claim is also preempted is unavailing.

Finally, Boar's Head has submitted the declaration of Susan Ballinger, the Labeling

Manager for the national distributor of Boar's Head Brand Products, (Dkt. No. 21), in support of

its arguments that the labels at issue have been approved by the FSIS and USDA.  The Ballinger

Declaration contains factual information beyond the Complaint, some of which has been

redacted, and none these documents have yet been examined in discovery. (Ballinger Decl., Exs.

D-K).  The Court should not consider the documents when considering the present motion.

Alternatively, if the Court considers the material, the motion "must be treated as one for

summary judgment under Rule 56 [and the] parties must be given a reasonable opportunity to

present all the material that is pertinent to the motion."  *See* Fed. R. Civ. Proc. 12(d).  Under the

circumstances, if the Court considers the declaration, and the applications attached thereto,

3

Boar's Head's motion should be converted to a motion for summary judgment, and Plaintiff should be allowed to proceed with discovery and have an opportunity to further respond once discovery has been had on these subjects.

## THE COMPLAINT

The Complaint asserts a class action on behalf of purchasers of the Lower Sodium Meats for violation of GBL §§ 349 and 350, and breach of express warranty. (AC ¶¶1-2, 63-79)  The Complaint alleges that Plaintiff purchased the Lower Sodium Meats based on Boar's Head's deceptive marketing and labeling. (AC ¶¶5, 15, 43, 54, 69, 76)

**The Deceptive "Golden Catering Style Oven Roasted Turkey Breast - 47% Lower Sodium" Label**

The Golden Catering Style Oven Roasted Turkey Breast- 47% Lower Sodium label states in large uppercase letters: "47% LOWER SODIUM".  Underneath this large claim, in much smaller letters, appears the explanation that "47% LOWER SODIUM THAN USDA DATA FOR OVEN ROASTED TURKEY BREAST". The label further provides that the reference product to support its relative claim about sodium content is "USDA data for Oven Roasted Turkey Breast."  However, there is no USDA data for "Oven Roasted Turkey Breast."[1]  In addition, Boar's Head regular "Ovengold Roasted Turkey" has only 3% more sodium than the Golden Catering Style Oven Roasted Turkey Breast- 47% Lower Sodium turkey. (AC ¶¶27-30)

**The Deceptive "Premium 47% Lower Sodium Oven Roasted Turkey Breast-Skinless" Label**

The Premium 47% Lower Sodium Oven Roasted Turkey Breast- Skinless label states in large uppercase lettering – exactly like the Golden Catering Style Oven Roasted Turkey Breast-

---

[1] The USDA Database is located at http://ndb.nal.usda.gov.

47% Lower Sodium label – "47% LOWER SODIUM," and beneath the large print it explains

"47% LOWER SODIUM THAN USDA DATA FOR OVEN ROASTED TURKEY BREAST."  This label also

provides that the reference product to support its relative claim about sodium content is "USDA

data for Oven Roasted Turkey Breast," which as explained above, does not exist.  In addition,

Boar's Head regular "Ovengold Roasted Turkey" has only 3% more sodium than the Premium

47% Lower Sodium Oven Roasted Turkey Breast-Skinless turkey. (AC ¶¶33-35)

**The Deceptive "Branded Deluxe Ham 42% Lower Sodium" Label**

The Branded Deluxe Ham 42% Lower Sodium label states in large lettering "42%

LOWER SODIUM."  Underneath this large claim, in much smaller letters, appears the

explanation that "42% LESS SODIUM THAN THE USDA DATA FOR HAM PRODUCTS."  The label

further provides that the reference product to support its relative claim about sodium content is

"USDA data for ham products."  However, there is no USDA data for "Ham Products". (AC

¶¶38-39)

**Boar's Heads Deceptive Low Sodium Advertising Campaign**

Defendant has made healthy eating and lower sodium a focal point of its marketing

campaigns.  The Lower Sodium Meats – despite their either meaningless or non-existent

reduction in salt/sodium – are part of Defendant's Health and Wellness line of products.(AC

¶51)For example, the following picture, taken from Boar's Head's website, informs consumers

that Boar's Head "Pile[s] on the flavor, Not the Salt":[2]

---

[2] This picture is taken from http://boarshead.com/health-wellness/information/lower-sodium/.



Boar's Head further instructs consumers in it advertisements, "Lowering Your Sodium

Intake . . .   An important step is to read nutrition labels and compare the sodium content of

similar food".  (AC ¶51) *See* below, located on http://boarshead.com/health-

wellness/information/lower-sodium/:

## Lowering Your Sodium Intake

Many don't realize that sodium occurs naturally in foods you wouldn't even think of…foods like fresh vegetables, fresh poultry and meat, and even milk and dairy products. Taste alone may not reveal which foods are high in sodium. It's all in your control if you just choose the right foods and take a little extra time in sizing up what's best for you. An important step is to read nutrition labels and compare the sodium content of similar foods.

At Boar's Head, our research and development has always been driven to create high quality food. Having lower sodium products is nothing new for us. Since the company began, we have developed our products to serve friends and family plentifully; always with a dedication to eating well.

The reason many foods are often loaded with sodium is that they have no flavor of their own. However, when you begin with products of exceptional quality, as Boar's Head does, you begin with flavor – natural flavor. Unlike some processed foods that rely heavily on sodium for flavor, the taste of Boar's Head products comes from the quality of our ingredients – pure pork, turkey, chicken and beef, combined with real spices and no artificial ingredients – making it unnecessary to overuse salt as a flavor enhancer. We are proud to say that our meats and cheeses contain no fillers, artificial colors or flavors, gluten or trans fat. We wouldn't put anything in our products that you wouldn't put on your own table. In addition, Boar's Head products are not meant to have a long shelf life, and therefore less salt is used as a preservative.



Note: 1 tsp Salt = 2,325mg sodium
*Source: Dietary Guidelines for Americans Figure 3–1, pg 22.*

*Choosing lower sodium products that meet health goals without sacrificing flavor is the best of both worlds. Combining Boar's Head lower sodium meats and cheese with fruits, vegetables and whole grains is a healthy start.*

6

Boar's Head further guides consumers to "*Keep the Flavor, Lose the Salt*":[3]

**TIPS TO LOWER YOUR SODIUM INTAKE AS PART OF A HEALTHY LIFESTYLE**

*Choosing the Right Foods for You.*

Sodium can occur in many foods you didn't even think of – including the freshest of vegetables. Fresh poultry, meat, and even milk contain sodium. Taste alone may not reveal which foods are high in sodium. It's all in your control if you choose the right foods and take a little extra time in sizing up what's best for you.

*Skip the Bread.*

Bread is the biggest contributor of sodium to the American diet, so on occasion, opt for an open-faced sandwich, or skip the bread entirely and have Boar's Head lower sodium meats and cheeses on a salad.

*Keep the Flavor, Lose the Salt.*

Boar's Head's full line of lower sodium deli meats and cheeses are created with the finest quality ingredients and are packed with natural flavor – no need to load up on salt. Try them in our lower sodium recipes or, swap them into your favorite sandwiches or salads to help reduce sodium.

*Moderation is Everything.*

Like everything else, common sense is key. Too much salt can be a true health danger. Balancing Boar's Head lower sodium deli meats and cheeses with fruits, vegetables and whole grains can help contribute to a healthy lifestyle.

In addition, Boar's Head regularly issues press releases boasting about the healthfulness of its products.  For example, on January 31, 2011, Defendant issued a press release with the title "Boar's Head Offers Solutions to the USDA Dietary Guidelines Sodium Reduction Recommendation - - Boar's Head maintains its 'Assault on Salt' with more than 20 lower sodium meats and cheeses."  Notwithstanding Defendant's self-lauding, an article from Dow Jones Factiva, Mediapost.com dated February 12, 2013, entitled "Mayor Bloomberg's Cause du Jour: Salt Reduction," reported that Bloomberg's initiative to strong-arm food marketers into reducing the amount of sodium they use by 25% by 2014 was, for the most part, on track; but the article went on to note Boar's Head was one of the three companies that did not reach the goals they aspired to (as reported by Eric Durkin of the New *York Daily News*). (AC ¶52)

## ARGUMENT

### I.   STANDARDS ON A MOTION TO DISMISS

On a motion to dismiss, plaintiffs are required to allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  A district court must accept as true all well-pleaded

---

[3] This picture is taken from http://boarshead.com/health-wellness/information/lower-sodium/.

factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *Schwartz v. HSBC Bank*

*USA, N.A.*, 2013 WL 5677059 at *12, (S.D.N.Y. Oct. 18, 2013).

## II.   PLAINTIFF'S CLAIMS UNDER GBL §§ 349 and 350 ARE NOT PREEMPTED

### A.   THERE IS NO BASIS TO PREEMPT PLAINTIFF'S CLAIM UNDER NY GBL § 350

Boar's Head does not even argue that the Complaint's claim for violation of GBL § 350

(false advertising) is preempted.  Boar's Head's preemption argument (Def. Br. at pp. 10-19)is

entirely predicated on federal regulations concerning labeling.  Thus, there are no grounds to

preempt Plaintiff's claim for violation of GBL § 350 arising out of Boar's Head's deceptive

advertisements. (See pp. 5-7, *supra*; AC ¶¶16, 42, 51-53)

### B.   GBL § 349, FMIA, AND PPIA IMPOSE CONCURRENT REQUIREMENTS

Congress enacted the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-472,

and the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601-695 with the express intent of

ensuring proper labeling of meat and poultry products.  *See*, *e.g.*, 21 U.S.C. § 451 and 21 U.S.C.

§ 602 (referring to "meat and meat products" instead of "poultry" but otherwise the exact same)

(" It is essential in the public interest that the health and welfare of consumers be protected by

assuring that poultry products distributed to them are…properly marked, labeled, and

packaged.")  The preemption provisions of the FMIA and PPIA, 21 U.S.C. § 678 and 21 U.S.C.

§ 467e respectively, limits their reach to requirements "in addition to, or different than" those

promulgated under federal law.  Thus, the PPIA and FMIA both provide that states may exercise

"concurrent jurisdiction" with the USDA to prevent the distribution of poultry and meat products

that have false or misleading labeling. *See* 21 U.S.C. §§ 467e & 678.

Under the PPIA and FMIA a plaintiff may invoke a state consumer protection statute to

"impose sanctions for violations of state requirements that are equivalent to the FMIA and the

PPIA's requirements." *Kuenzig v. Kraft Foods*, 2011 WL 4031141, at *4 (M.D. Fla. Sept. 12,

2011), *aff'd* 505 Fed.App'x 937, 2013 WL 385524 (11th Cir. Feb. 1, 2013); s*ee also U.S. v.

Stanko*, 491 F.3d 408, 418 (8th Cir. 2007) ("While it is true that [the FMIA] prohibits states from

imposing '[m]arking, labeling, packaging, or ingredient requirements in addition to, or different

than, those' mandated under the FMIA, 21 U.S.C. § 678, nothing in the text of

the FMIA indicates an intent to preempt state unfair-trade-practices laws in general, nor have we

found any cases supporting Stanko's claim that it does so.")

Here, Plaintiff invokes GBL § 349 to hold Boar's Head to the same standard as the PPIA

and FMIA.  Because the Complaint does not seek to impose requirements beyond those imposed

by FMIA and PPIA its claims are not preempted. (AC ¶¶9, 63-74)

## C.   THE FOOD SAFETY AND INSPECTION SERVICE ("FSIS") PRE-APPROVALS DEFENDANT RELIES ON ARE INVALID

### 1.   Boar's Head failed to update the Lower Sodium Meats labels post-FSIS approval to prevent them from becoming inaccurate

Once a label receives FSIS pre-approval it is the company's duty to ensure that the

information on the label remains accurate.  *See* "Guide to Federal Food Labeling Requirements

for Meat, Poultry, and Egg Products"[4] at p. 19 published by the FSIS/USDA in August, 2007,

("prior-approval process does not excuse an establishment from ensuring that its labeling fully

complies with applicable FSIS labeling requirements") (AC ¶23).[5]  As explained by the Supreme

---

[4] Accessible at http://www.fsis.usda.gov/wps/wcm/connect/f4af7c74-2b9f-4484-bb16-fd8f9820012d/Labeling_Requirements_Guide.pdf?MOD=AJPERES.
[5] Plaintiff corroborated this by contacting Sally L. Jones, Senior Technical Advisor, Labeling and Program Delivery Division, USDA/FSIS.  Ms Jones told Plaintiff, "it is really the companies [sic] responsibility to ensure the accuracy of their labeling.  Regardless of what reference food they are using…the company has to ensure that claims remain accurate." (AC ¶48)

9

Court in *Wyeth v. Levine,* 555 U.S. 555, 558-59 (2009), regarding FDA pre-approvals, pre-approvals are not dispositive when the company fails to update its label to ensure accuracy. *See also U.S. v. An Article of Food...Manischewitz...Diet Thins*, 377 F.Supp. 746, 748 (E.D.N.Y. 1974) ("change in the comparative contents of the package may render a label misleading which was truthful when it was first [approved]").

Boar's Head has undeniably failed to maintain the accuracy of its labels for the Lower Sodium Meats. As set forth above, all the labels for the Lower Sodium Meats reference non-existent USDA Data, and all the Lower Sodium Meats contain practically the same amount of sodium as the comparable regular Boar's Head meat. (AC ¶¶27-40)

Unable to deny the inaccuracy of its labels, Boar's Head argues (Def. Br. at pp. 15-17) that it has no obligation to ever update a label post-FSIS approval regardless of how inaccurate or deceptive labels eventually become. Boar's Head's argument is ludicrous. As shown above, this argument is contradicted by not only the FSIS Guide, but also, as Boar's Head acknowledges (Def. Br. at p. 3), the intent of the PPIA and FMIA labeling regulations, which is to prevent the sale of misbranded poultry and meat. If the Court adopts Boar's Head's position it would shift the PPIA and FMIA from statutes which protect the public to statutes which shield a meat producer from liability for a misleading labels.[6]

Because a label at one point received FSIS pre-approval does not mean that it can never become deceptive. Where, as here, the company fails to update it labels causing them to become "out of date" and "inaccurate" (AC ¶¶32, 37, 40), the company cannot rely on FSIS approval to shield itself from liability.

---

[6] Boar's Head's reliance (Def. Br. at  p. 12) on *Kuenzig v. Kraft Foods*, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) and *Meaunrit v. The Pinnacle Foods Group, LLC*, 2010 WL 1838715 (N.D. Cal. May 5, 2010) is misguided. In neither of these cases was it alleged – as it is here – that the company allowed their label to become inaccurate post-approval.

### 2.   The **Lower Sodium Meats'** labels fail to draw a valid comparison

Under 9 C.F.R. § 317.313(j) and 9 C.F.R. § 381.413(j), meat and poultry products may

include statements comparing levels of nutrients to an appropriate reference product.  However,

the comparison must "not cause consumer confusion when compared." *See* 9 C.F.R. §

381.413(j)(1)(ii)(b) and 9 C.F.R § 317.313(j)(1)(ii)(b).  Boar's Head's comparison of the Lower

Sodium Meats to non-existent reference products falls obviously short of drawing a valid

comparison.

Boar's Head compares two of the Lower Sodium Meats (Golden Catering Style Oven

Roasted Turkey Breast- 47% Lower Sodium and Premium 47% Lower Sodium Oven Roasted

Turkey Breast-Skinless) to "USDA data for Oven Roasted Turkey Breast".  As set forth above,

there is no reference in the USDA database to a product called "Oven Roasted Turkey Breast".

(AC ¶¶3, 7, 29, 30, 32, 35)  Plaintiff has searched multiple times, and the closest comparison that

can be found in the USDA database to "Oven Roasted Turkey Breast" is NDB designation 07079

for "Turkey Breast, Sliced, Oven Roasted, Luncheon Meat."[7]  In support of its motion, Boar's

Head (Def. Br. at p. 14) limits its argument on this point to a steadfast denial that 07079 is not

the reference product for these labels.  Yet Boar's Head fails to explain what the applicable

reference product is.  Boar's Head does not mention the reference product for these labels

because none exists.

Similarly, Boar's Head compares its Lower Sodium Ham to "USDA Data for Ham

Products".  There is no listing for "Ham Products" on the USDA Database.  Searching "Ham

Products" brings up numerous results, none of which contain the amount of sodium Boar's Head

---

[7] Even if this were the reference product, it does not make Boar's Head's sodium representation
accurate.

claims Ham Products has. (AC ¶39)  In reference to this label, Boar's Head again fails (Def. Br. at p. 15) to even mention what the actual reference product is.

In an attempt to save its deficient labels, Boar's Head argues (Defs. Br. at pp. 14-15 & 18-19) that it was not required to select a particular reference product because once a product contains at least 25% less sodium a manufacturer may make any claim – no matter how misleading – on its labels regarding the product's lower sodium level.  Whether Boar's Head did or did not have to select a reference product is irrelevant because its labels do list (non-existent) reference products.  There is no regulation that permits a manufacturer to list incorrect reference products once it has elected to make a relative claim on its label.  Moreover, at a minimum, the manufacturer must be able to explain what the reference product is when its label is challenged. As explained above, despite being given ample opportunity, Boar's Head has not explained what the Lower Sodium Meats have lower sodium in reference to.  (AC ¶¶3, 7, 8, 10, 17, 31)

The labels for the Lower Sodium Meats are plainly invalid.

### III.   THE COMPLAINT STATES A CLAIM UNDER GBL §§ 349 AND 350

There are three elements that must be pled to state a claim under GBL § 349: (1) that the challenged act or practice was consumer-oriented, (2) the act or practice (or in the case of § 350 – advertisement) was misleading in a material way, and (3) plaintiff suffered injury as a result of the deceptive act.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24 (2000); *see also Lacourte v. JP Morgan*, 2013 WL 4830935 (S.D.N.Y. September 4, 2013).  Defendant does not dispute (Def. Br. at pp. 9, 19-22) that the first two elements are satisfied.

To plead injury the complaint must allege, "actual injury caused by a materially misleading or deceptive act or practice."  *City of New York v. Smokes-Spirits.com*, 12 N.Y.3d 616 (2009).  It is well-settled in New York that "[i]njury is adequately alleged under GBL §§

12

349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *23 (E.D.N.Y. Jul. 21, 2010) citing *Jernow v. Wendy's Int'l.*, 2007 WL 4116241, at *3 (S.D.N.Y. Nov. 15, 2007).

The Complaint alleges that as a result of the deceptive business practices and false advertising, Plaintiff paid a premium for Boar's Head's products rather than purchasing less-expensive non-branded alternative deli products. (AC ¶¶5, 15, 18, 41, 43, 54, 69)  Boar's Head ignores that Plaintiff was not in the market for Boar's Head cold cuts specifically.  Plaintiff was a "health-conscious" consumer in the market for low sodium cold cuts.  Without the deceptive representations in Boar's Heads' advertisements and labels concerning the sodium content of the Lower Sodium Meats, Plaintiff would have purchased a cheaper alternative.[8] (AC ¶69)

A review of *Ackerman v. Coca-Cola*, *supra*, is instructive here.  In *Ackerman* plaintiffs alleged that defendant's false labeling on its Vitamin Water products distinguished it from other soft drinks, and thereby – as is the case here – induced plaintiffs to pay a premium.  The court held that these allegations were sufficient to allege a cognizable injury under the GBL.  Thus, here, just as in *Ackerman*, Plaintiff has alleged a cognizable injury sufficient to state a claim under GBL §§ 349 and 350.

## IV.    THE COMPLAINT STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY

"To state a claim for breach of express warranty, a plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment."  *DiBartolo*

---

[8] Boar's Head acknowledges the premium nature of its products on http://scamwich.com/ where it offers a "reward" to consumer who report "sandwich fraud," i.e. – a consumer who requests Boar's Head is given a "cheap imposter."

*v. Abbott Laboratories*, 914 F.Supp. 2d 601, 625 (S.D.N.Y. Dec. 21, 2012) citing *Weiner v.*

*Snapple Beverage Corp*, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011).  The Complaint

alleges (AC ¶76) that Boar's Head made an express warranty that its Lower Sodium Meats

contained a percentage less sodium than either valid USDA data or, alternatively, its own regular

products, and Plaintiff relied on that warranty to his detriment.  Thus, Plaintiff clearly states a

claim for breach of express warranty under New York law.

Further, the Supreme Court has stated in no uncertain terms that "A manufacturer's

liability for breach of an express warranty derives from, and is measured by, the terms of that

warranty.  Accordingly, the 'requirements' imposed by an express warranty claim are not

'imposed under State law,' but rather imposed *by the warrantor."  Cipollone v. Liggett Group*,

505 U.S. 504, 525 (1992) (emphasis in original) (breach of express warranty claim not

preempted under the Federal Cigarette Labeling and Advertising Act).  Thus, this claim is not

preempted.

## CONCLUSION

Boar's Head motion to dismiss should be denied.

Dated: November 12, 2013

BRAGAR EAGEL & SQUIRE PC


By:      s/Lawrence P. Eagel
         Jeffrey H. Squire
         Lawrence P. Eagel
         David J. Stone
885 Third Avenue, 30th Floor
New York, NY 10022
Tel: (212) 358-5858
squire@bespc.com
eagel@bespc.com
stone@bespc.com

*Counsel for Plaintiff and the Class*

15